AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
7/12/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ____LR____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
7/12/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ____clee____ DEPUTY

United States of America

v.

LUIS TERAN BELTRAN,

Defendant.

Case No.   2:21-MJ-3253

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 19, 2020, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/S/ Scott Flanigan
Complainant's signature

Scott Flanigan, DEA Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   7/12/2021

Judge's signature

City and state:   Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Scott Flanigan, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Luis Teran BELTRAN ("BELTRAN"), for a violation of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"), assigned to the Orange County Resident Office Group 2. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a

DEA SA since December 2009, during which time I have conducted numerous investigations involving narcotics trafficking.

4. In my capacity as a DEA SA, I have received specialized training on the subjects of narcotics trafficking and money laundering, and I have been involved in investigations concerning the possession, manufacturing, distribution, and importation of controlled substances, as well as the methods used to finance drug transactions. I have also had numerous conversations regarding these subjects with other law enforcement officers.

5. I have employed a variety of investigative techniques and resources in connection with the aforementioned investigations, including physical and electronic surveillance, the analysis of telephone records, and the use of informants and cooperating sources. I have also participated and assisted in undercover operations and planned and executed various arrest and search warrants.

### III. SUMMARY OF PROBABLE CAUSE

6. A broker in Mexico provided a DEA confidential source with a contact phone number for a local associate who could supply the confidential source with fentanyl. Based on this information, a DEA undercover agent purchased approximately 1,000 fentanyl pills from BELTRAN on August 19, 2020.

### IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, my conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. Luis Teran BELTRAN Sells 197.3 Grams of Fentanyl (Approximately 1,000 Pills) to a DEA Undercover Agent on August 19, 2020

8.  In August 2020, a DEA confidential source (the "CS")[1] provided the DEA with information that an individual, later identified as BELTRAN, was using telephone number (323) 949-1945 to facilitate a transaction for the purchase of fentanyl. The CS received this information from a drug broker in Mexico, who told the CS that the user of telephone number (323) 949-1945 could supply the CS with approximately 1,000 fentanyl pills in exchange for $4,000.

9.  During the days leading up to August 19, 2020, a DEA Special Agent acting in an undercover capacity (the "UC") contacted the user of telephone number (323) 949-1945 to coordinate the purchase of fentanyl pills. The user of the phone number and the UC agreed to meet at the Walmart parking lot located at 8500 Washington Boulevard, Pico Rivera, California.

10. At approximately 1:40 p.m. on August 19, 2020, the UC arrived at the Walmart parking lot and called the (323) 949-1945 telephone number to confirm the transaction. At approximately

---

[1] The CS has been providing information as a confidential source cooperating with law enforcement since 2005. During that time, information from the CS has led to the initiation of multiple investigations, arrests, and seizures of controlled substances. Information provided by the CS has led to investigations into multiple Los Angeles based drug trafficking organizations. Information provided by the CS has proved to be consistently credible and reliable. The CS has one prior arrest from 2001 for money laundering and fraud. The CS is currently working for financial compensation.

2:10 p.m., the (323) 949-1945 telephone number called the UC and told him that he was roughly 15 minutes from the location. At approximately 2:41 p.m., law enforcement observed an individual, later identified as BELTRAN, approach the Walmart parking lot on foot and walk to the UC's location. BELTRAN then sold approximately 1,000 suspected fentanyl pills to the UC in exchange for $4,000. During the transaction, BELTRAN told the UC that BELTRAN would be available to supply additional fentanyl pills in the future.

11. Following the exchange, law enforcement observed BELTRAN leave the parking lot on foot. Law enforcement observed BELTRAN run across Washington Boulevard and cut through an apartment complex before coming out onto Crossway Drive. Law enforcement then observed BELTRAN enter a 2013 blue Cadillac sedan, bearing license plate number 8MUV843. Database records revealed that the Cadillac is registered to BELTRAN.

12. Investigators obtained a photograph of BELTRAN using law enforcement databases. The UC reviewed BELTRAN's photograph and identified the man depicted as the individual who had sold him fentanyl during the transaction.

13. The suspected fentanyl delivered by BELTRAN, with a gross weight of approximately 197.3 grams, was sent to the DEA Southwest Laboratory for further analysis. On September 18, 2020, the laboratory confirmed that the pills tested positive for fentanyl, with a net weight of 109 grams.

## V. CONCLUSION

14. For the reasons described above, there is probable cause to believe that Luis Teran BELTRAN has committed a violation of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>12th</u> day of
<u>  July  </u>, 2021.

_____
THE HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE

5